The defendant has requested review of the portion of the recommended decision of Trial Judge Willi (reversing in part a decision of the Armed Services Board of Contract Appeals), which held that the plaintiff should recover certain precontract costs under a contract that was terminated for the convenience of the government. We heard oral argument. We conclude that neither the trial judge nor the Board applied the correct legal standard, and we remand the case to the Board for further proceedings under the standard we enunciate.
I.
Plaintiff, an electronic equipment manufacturer, produced a device (the Codex Model TD-12 forward error corrector) that corrected channel disturbance errors in teletype transmission and reception of encrypted data. As a result of a technical change adopted by the multinational body referred to by the French acronym CCITT and a shift in the universal standard of cryptography, plaintiffs device *694 became unsalable, and plaintiff made its last domestic and foreign sales of this equipment in 1968 and 1969, respectively-
In 1967 and 1968, the United States Air Force Communications Service discussed with plaintiff the possibility of using the TD-12 system in mobile communications operations. Plaintiff, desiring to find a market for its nearly obsolete TD-12’s, began development of a suitable system. This was done at plaintiffs own expense and with the sustained encouragement of interested Air Force personnel, none of whom, however, had the authority to bind the government. By 1969, plaintiff had successfully developed the device, which consisted of its existing Model TD-12 and a field case specifically designed for mobile operations. The plaintiff designated the combination as Codex model CT-12.
After the plaintiff had developed equipment that met the Air Force’s requirements and the Air Force had obtained funding, the Air Force on October 9,1970, issued a request for proposals. On March 22 and 25, 1971, a contract was signed, with an effective date of April 2,1971, under which the plaintiff agreed to supply the Air Force with seven Codex Model CT-12’s at a total price of $92,592. On April 15 1971, before any deliveries were made, the contract was terminated for the convenience of the government.
On April 6, 1972, plaintiff submitted a claim for a termination settlement of $78,115. The two major items for which the plaintiff sought compensation were the costs of the Model TD-12 and of the field cases.
The termination contracting officer denied substantially all of the plaintiffs claim. Plaintiff appealed to the Armed Services Board of Contract Appeals (the Board), which affirmed the contracting officer’s disallowance of the cost of the TD-12 equipment and the proto-type field cases. The Board rendered two lengthy opinions. In the first opinion the Board held that under the Armed Services Procurement Regulations (ASPR), which were incorporated into the contract, the plaintiff was not entitled to recover for these two items "[b]ecause . . . [their] costs were incurred prior to the award of the contract” and therefore
they were not costs incurred in the performance of the work terminated and are therefore not allowable as a *695 part of the termination for convenience settlement. In so finding the Board has concluded that under subpara-graph (e)(ii)(A) in order to be a cost incurred in the performance of the work terminated a cost must be incurred after the award of the contract or must be allowable as a precontract cost pursuant to ASPR 15-205.30.
74-2 B.C.A. ¶ 10,827, p. 51,497. In its opinion on reconsideration, the Board discussed and rejected the plaintiffs contention that the governing Armed Services Procurement Regulation was not the one upon which the Board had relied but was section 8.301, 32 C.F.R. § 8.301 (1972),[1] under which the plaintiff contended it was entitled to recover.
In his review of the Board’s decision under the Wunder-lich Act, the trial judge upheld the Board’s rejection of the plaintiffs claim relating to the Model TD-12 but set aside the Board’s rejection of the field case claim. The trial judge ruled that section 8.301 governs the latter claim, that this section "identifies fundamental fairness as the overriding criterion in the formulation of appropriate terms for the settlement of a convenience termination of a fixed-price contract” and that under the "fundamental fairness” standard, the plaintiff is entitled to recover costs of $36,152 for the field case. The government challenges that ruling; the plaintiff has not excepted to the denial of its claim relating to the Model TD-12.
II.
The plaintiffs entitlement to recover its costs for the field cases depends upon the meaning and application of complex, ambiguous, and sometimes seemingly inconsistent provisions of the Armed Services Procurement Regulations.
The contract, a negotiated fixed-price contract, incorporated by reference 74 paragraphs of the Armed Services Procurement Regulations. The pertinent portion of this incorporation by reference was the following:
*696 Reference Number
ASPR Paragraph
Clause Title
Date of Clause
19
7-103.21(c)
Termination for Convenience of the Government
1970 Jul
Section 7.103, 32 C.F.R. § 7.103 (1972), directed that specified clauses "be inserted in all fixed-price supply contracts.” Section 7.103-21(c) provided for insertion of the clause set forth in section 8.701(a). The latter section, captioned "Termination clause for fixed-price contracts,” provided that, if the contractor and the contracting officer were unable to agree upon the amount of the settlement following a termination for convenience of the government, the contractor was entitled to be paid for incomplete work, such as that involved here, "[t]he costs incurred in the performance of the work terminated, including initial costs and preparatory expense allocable thereto.” Section 8.701(a)(e)(ii)(A). Subsection (f) provided that such "[c]osts . . . determined. . . shall be in accordance with section XV of the [ASPR] as in effect on the date of this contract.” This version of subsection (f) was contained in revision 8 of the ASPR, which was dated September 30, 1970, 9 days before the request for proposals and 6 months before the contract was entered into. It superseded a prior version of subsection (f); which had provided that the determination of such costs wás to be "governed by the principles for consideration of costs set forth in Section XV, Part 2, of the [ASPR], as in effect on the date of the contract.”
We conclude that the contract was intended to and did incorporate the later version in revision 8 of the provisions of the ASPR governing the determination of costs following termination for the convenience of the government of fixed-price supply contracts. This is shown by the July 1970 date *697 in the contract as the reference for those provisions. The prior version of the termination clause was dated April 1966; the later version contained in revision 8 was dated July 1970.
Although plaintiff agrees that it is bound by the revised termination clause contained in section 8.701(a), it contends that because revision 8 was not published in the Federal Register until April 28,1971 (36 Fed. Reg. 7899), which was 13 days after the contract was terminated, it should not be bound by the other changes in revision 8. As we have seen, the contract was signed about 6 months after revision 8. was adopted. All of the work for which plaintiff now seeks compensation had been performed more than 9 months before the contract was signed. The possible purchase by the Air Force of the Model CT-12 was the only hope the plaintiff had at that time of salvaging what otherwise would have been its worthless inventory of the TD-12. In these circumstances it is impossible to believe that the plaintiff would not have entered into the contract if the other changes in the basis for determining precontract costs made by revision 8 had been specifically called to its attention. Furthermore, there is no unfairness in applying revision 8 in determining the precontract costs for which plaintiff is entitled to reimbursement.
As noted, subsection (f) of the termination-for-the-convenience-of-the-government clause (section 8.701(a)(f)) required that costs be determined in accordance with section 15 of the ASPR. Section 15.102(c) provided that the cost principles in part B (which also was part 2) of that section should be "the basis . . . (c) [for] . . . determining costs under terminated fixed price and cost reimbursement type contracts (§ 8.204 and 8.214 of this chapter).” One of the cost principles in part B is contained in section 15.205-30, which provided that
Precontract costs are those incurred prior, to the effective date of the contract directly pursuant to the negotiation and in anticipation of the award of the contract where such incurrence is necessary to comply with the proposed contract delivery schedule.
The field case costs do not satisfy that standard since they have not been shown to have been "necessary to comply *698 with the proposed contract delivery schedule.” When the plaintiff incurred these costs, the requests for proposals had not yet been issued, and there was no proposed contract delivery schedule. If this provision alone controlled, the plaintiff could not recover.
The correct analysis is not that simple, however. Section 15.102(c) referred to section 8.214. The latter section provided:
The cost principles and procedures set forth in the applicable Part 15 of this chapter shall, subject to the general policies set forth in § 8.301, (a) be used in . . . determining costs relevant to termination settlements under fixed price and cost reimbursement type contracts with other than educational institutions;.. . .
(Emphasis added.) Thus, the cost principle set forth in section 15.205-30 is subject to the "general policies” set forth in section 8.301. The latter provided in pertinent part:
(a) A settlement should compensate the contractor fairly for the work done and the preparations made for the terminated portions of the contract, including an allowance for profit thereon which is reasonable under the circumstances. Fair compensation is a matter of judgment and cannot be measured exactly. In a given case, various methods may be equally appropriate for arriving at fair compensation. The application of standards of business judgment, as distinguished from strict accounting principles, is the heart of a settlement.
# * * * *
(c) Cost and accounting data may provide guides, but are not rigid measures, for ascertaining fair compensation. In appropriate cases, costs may be estimated, differences compromised, and doubtful questions settled, by agreement. Other types of data, criteria, or standards may furnish equally reliable guides to fair compensation. [2]
The proper reconciliation of the strict standard of allowable costs in section 15.205-30 and the fairness concept in section 8.301 is a matter primarily within the discretion of the Board of Contract Appeals. The Board did not decide the question. In its opinion on reconsideration, it stated *699 that it "expresses no opinion as to .whether the disputed costs concerned in this appeal would or would not be allowable as a part of the termination settlement if allowability were to be governed by paragraph 8.301.” 75-2 B.C.A, ¶ 11,554, pp. 55,149-50. Our holding is not that section 8.301 governs the plaintiffs claim for the field case costs, but that the application of the cost principles in part 2 of section 15 to that claim must be made "subject to the general policies set forth” in section 8.301.
Accordingly, we shall remand the case to the Board of Contract Appeals to make that determination. See United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 430-32 (1966). In so remanding, we intimate no views on the proper result in this case or the basis upon or method by which the Board is to reconcile or accommodate these two sections. Similarly, we express no opinion on the trial judge’s view that section 8.301 "identifies fundamental fairness as the overriding criterion in the formulation of appropriate terms for the settlement of a convenience termination of a fixed-price contract.”
The case is remanded to the Armed Services Board of Contract Appeals for further proceedings on the field case claim in accordance with this order.

 All of the sections of the ASPR cited in this order are contained in 32 C.F.R. (1972).

 Cf. section 15.106, which provided that although section 15 "shall be used” in determining or negotiating costs in fixed-price contracts, “the objective will continue to be to negotiate prices that Eire fair and reasonable, cost and other factors considered.”