**PRECISION SPECIALTY
CORPORATION,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 668–84C.

United States Claims Court.

May 20, 1988.

Howell R. Riggs, Jr., Huntsville, Ala., atty. of record, for plaintiff.

Stuart James, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

*Introduction*

Plaintiff, Precision Specialty Corporation (Precision), filed a complaint in this court on December 17, 1984, claiming an entitlement to reimbursement of $5,244 in termination costs and challenging the contracting officer's (CO's) final decision, regarding Precision's termination claim, following the termination for convenience of contract-purchase order No. DLA 700–83M–3482. Precision entered into this contract for delivery of supplies with the Defense Construction Supply Center (DCSC or defendant) on October 20, 1982. Subsequent to filing said complaint, plaintiff filed a motion for partial summary judgment, limited to the issue of defendant's liability, on September 24, 1985. Defendant, in turn, followed with a cross-motion for summary judgment on November 15, 1985.

■ Jurisdiction properly lies in this court under 28 U.S.C. § 1491 and 41 U.S.C. § 609(a)(1).[1] For the reasons given below,

---

**1.** The court notes that in other Claims Court cases a settlement proposal submitted by the contractor has been found to be outside this court's jurisdiction because it did *not* constitute a "claim" for purposes of the Contract Disputes Act of 1978, 41 U.S.C. § 605(a). *See Gardner Machinery Corp. v. United States,* 14 Cl.Ct. 286 (1988). However, we are disposed to distinguish the case at bar from *Gardner* in that the regulations, at issue, in this case specifically define a "settlement proposal" to mean "a termination claim submitted by a contractor" (32 C.F.R. § 8–101.20) and further define a "termination claim" to mean "any claim by a contractor ... for compensation for the termination, in whole or in part, of the prime contract...." 32 C.F.R. § 8–101.25. At 32 C.F.R. § 8–307.1(e) the regulations also speak to "a claim for reimbursement of costs" due to the termination of

the contract. Therefore, under these regulations, we find that the filed settlement proposal does, as a matter of law, constitute a "claim," and thus this court has Contract Disputes Act jurisdiction over plaintiff's action here arising from the contracting officer's denial of Precision's settlement proposal. Finally, the Federal Circuit in *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987), sets out the standard for a claim as follows: "[a]ll that is required [to constitute a claim] is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the *basis* and *amount* of the claim." (emphasis added). We find that plaintiff's submission on DD Form 831 clearly meets this standard by setting forth the amount claimed as reimbursement costs due to plaintiff

we grant plaintiff's partial summary judgment motion and hold that the government is liable to plaintiff pursuant to its termination claim. We, concomitantly, deny defendant's cross-motion.

*Facts*

The court finds the operative facts delineated hereinafter to be undisputed by the parties.

Precision entered into a fixed-price supply contract with defendant (No. DLA 700–83M–3482) on October 20, 1982. The contract called for plaintiff to deliver 18 gearshaft spurs by March 19, 1983, for a total contract price of $22,500. In November of 1982 defendant notified plaintiff by a dated message to stop work on six of the contract units. Shortly thereafter, in December of 1982, a second message issued from defendant similarly instructing plaintiff to also stop work on an additional ten (10) contract units. Finally, on or about January 13, 1983 and January 24, 1983, plaintiff received Modifications No. P0001 and No. P0002 which, respectively, terminated the first six (6) contract units and the subsequent ten (10) contract units. After these partial terminations for convenience, plaintiff was then contractually obligated only to deliver two (2) contract units. Both contract modifications, *supra,* included the following language:

> The "Additional General Provisions" set forth as paragraphs 17 through 20 of DD Form 1155r are hereby incorporated into this order by reference and this order is hereby terminated for the convenience of the Government pursuant to paragraph [18] for the supplies identified in paragraph (c) below.

Paragraph 18 of the Additional General Provisions provides, in pertinent part, as follows:

> The contracting officer, by written notice, may terminate this contract, in whole or in part, when it is in the best

interest of the Government. If this contract is for supplies and is so terminated, the Contractor *shall be compensated in accordance with Section VIII* of the Defense Acquisition Regulation [DAR] in effect on this contract's date....

(emphasis added). On each modification, *i.e.,* No. P0001 and No. P0002, plaintiff signed same and indicated thereon that the "[c]ontractor *has incurred costs and will submit a termination claim.*" (emphasis added). The modification forms instructed plaintiff to forward any claim resulting from the convenience termination in accordance with the directions issued by the terminating contracting officer. Thereafter, Precision did submit as required a termination settlement proposal on DD Form 831 (Settlement Proposal—Short Form) dated December 1, 1983. In its settlement proposal, plaintiff claimed $5,244 in termination costs as charges for increased production costs, manufacturing overhead, and legal and accounting fees that accrued in preparation of the settlement proposal. These charges, which plaintiff certified on DD Form 831, were only "allocable to the terminated portion of [the] contract." However, in passing on the efficacy of said claim, the terminating contracting officer (TCO) made a unilateral final decision, dated April 5, 1984, in which he *recharacterized* the settlement proposal of plaintiff as an "equitable adjustment in price of the remaining units on the contract." Thereafter, and premised solely on said recharacterization, he found that no contract provision entitled plaintiff to such an equitable adjustment of the price for the remaining two (2) contract items under clause 18 of the "Additional General Provisions" as cited above, and, therefore, summarily denied plaintiff's claim.[2]

*Contentions of the Parties*

A. *Plaintiff*

Against this background, under Section VIII of the DAR, plaintiff argues that it

---

in view of the termination. *See* 32 C.F.R. § 8–307.1 (1982). All regulations cited in this opinion are those in effect in 1982 at the time of contract formation.

2. The terminating contracting officer cited to paragraph 19 of the Additional General Provisions in error; we note that it is paragraph 18 which is entitled "Termination for Convenience."

submitted the required form (*i.e.*, DD Form 831) and followed the correct procedures in a timely fashion in tendering its termination claim in the amount of $5,244. Moreover, according to plaintiff, defendant mischaracterized its submission (termination claim) as a claim for an equitable adjustment without a legal basis therefor, misread the contract clause covering such adjustments, and misapplied the regulations to deny plaintiff's recovery of costs on the continued portion of the contract. Section VIII permitted plaintiff to submit a claim for compensation of costs associated with the continued performance of work under the contract, plaintiff contends. In this regard, plaintiff claims an entitlement —to a per unit production cost increase to cover the unabsorbed set-up and tooling costs of plaintiff's supplier that arose due to the reduction in quantity (*i.e.*, 16 units) ordered by defendant, to a reimbursement for appropriate overhead, and finally to a reimbursement for legal and accounting fees incurred as a result of preparing the settlement proposal. Therefore, Precision asserts that the court should grant its motion for summary judgment, as to defendant's liability, since defendant is legally liable for all reasonable costs incurred by plaintiff in performing the continued portion of the contract.

### B. *Defendant*

Conversely, in its cross-motion, defendant maintains that plaintiff submitted a claim for an equitable adjustment in the price of the remaining units under the contract and that the contract clause governing convenience terminations does not *specifically* allow for the filing of an equitable adjustment claim. Further, if the contract clause did allow for the filing of such a claim, defendant argues that plaintiff's claim was untimely submitted to the CO since it was not filed within the 90 days after the termination of the contract, as

required by the regulations. Alternatively, defendant contends that even if plaintiff's claim is construed to be a termination claim, and thus concluded to have been timely filed, plaintiff has failed to support its claim with the corroborative documentation required by the regulations. Thus, argues defendant, for such reason, plaintiff is not entitled to relief.[3]

*Issues*

It is axiomatic that the court must resolve the following issues in ruling on the parties' cross-motions: (i) whether plaintiff's claim, as submitted to the contracting officer, should be characterized as a claim for termination settlement or an equitable adjustment; (ii) if found to be an equitable adjustment, whether the contract and/or the incorporated regulations allowed for an equitable adjustment claim; (iii) what regulatory sections were in effect on the date of contract formation governing termination and equitable adjustment claims; and (iv) whether plaintiff's claim was timely filed with the TCO if the appropriate characterization was an equitable adjustment claim.

*Discussion*

I. The Contractor's Claim Under The Contract Disputes Act

■ Under 41 U.S.C. § 609(a)(1), the contractor may bring an action *directly* on the claim in this court in lieu of appealing the contracting officer's decision to an agency board of contract appeals. The action in this court is a *de novo* proceeding. *Id.* at § 609(a)(3). In other words, once properly here, this court shall rule on Precision's claim as an original proceeding, and not as a limited review of the contracting officer's decision.

Now pending for decision before this court are the parties' cross-motions for summary judgment. Plaintiff seeks a *partial* summary judgment as to the government's liability for certain claimed costs. In its cross-motion, defendant urges the

---

**3.** Countering, plaintiff has also contended, as an aside, that defendant's cross-motion for summary judgment was untimely since it was not submitted on the date called for by this court's pretrial order. However, we find that plaintiff errs in that regard inasmuch as once a summary judgment motion is filed, as here by the plaintiff, the time for the non-moving party's response is governed by the *rules* of this court which supplant the filing schedule of the court's pretrial order.

court to grant its *total* summary judgment motion and dismiss plaintiff's claim. In order to grant either party's motion, the court, of course, must find that there are no genuine issues of material fact and that the prevailing moving party is entitled to judgment as a matter of law. RUSCC 56(c). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560 (Fed.Cir.1987). The facts recounting the operative events leading up to plaintiff's submission of DD Form 831, Settlement Proposal, are not disputed by the parties. On the other hand, the quantum of plaintiff's entitled damages, however, is in dispute. Therefore, the court will, at the threshold, first focus on plaintiff's motion for a partial summary judgment as to the government's general liability for the costs that were submitted on the plaintiff's settlement proposal dated December 1, 1983.[4] Following our discussion of plaintiff's motion, we shall then address defendant's cross-motion.

## II. Plaintiff's Motion For Summary Judgment

On or about January 5, 1983, plaintiff signed contract modification No. P0001 and indicated that it *had* incurred costs resulting from the convenience termination and that it would submit a "termination claim." Likewise, on or about January 31, 1983, plaintiff also indicated on contract modification No. P0002 that it would submit a claim for "termination costs." Several months thereafter, on December 1, 1983, plaintiff did submit to the contracting officer DD Form 831, styled Settlement Proposal (Short Form). On said form, in the explanation block, plaintiff claimed *increased* costs of $5,244 as follows: $3,000 due to the reduction in quantity of gearshaft spurs to be produced as ordered by the government; a manufacturing over-

head cost of $1,669 based on the foregoing increase in production costs; legal fees of $350; and accounting fees of $225. Further, in executing DD Form 831, plaintiff certified that "the above proposed settlement includes only charges allocable to the terminated portion of the contract or purchase order." However, notwithstanding the foregoing, the contracting officer, in his decision of April 5, 1984, deemed plaintiff's submission to be a "claim for an equitable adjustment in price of the remaining units of the contract."

Plaintiff strenuously argues that plaintiff did indeed submit what may properly be characterized as a termination claim. Nevertheless, in the context of its *later* responsive pleadings, plaintiff also urges that the above costs obviously and necessarily resulted from plaintiff's *performance* of the continued portion of the contract.

### A. *Equitable Adjustments and Termination Claims*

The initial task of this court is to properly characterize plaintiff's claim submission made to the contracting officer on December 1, 1983. Defendant makes two contentions regarding that submission: first, that since plaintiff's claim was a request for an equitable adjustment, there was no contract provision for the making of such an adjustment; and second, that plaintiff's claim was time-barred as an equitable adjustment because it was not filed within 90 days of the effective date of the contracting officer's termination notice, as required by applicable regulations. In emphatically recharacterizing plaintiff's claim, *supra*, we note that the contracting officer failed to put forth any factual underpinnings as the linchpin for the reason which warrants his designation of plaintiff's claim as an equitable adjustment when he denied it. Therefore, we now turn to the subject contract provisions and to the applicable

---

4. We note that plaintiff also submitted a subsequent settlement proposal, dated August 1, 1985, for a *greater* amount, $6,011, to the court, but since there is no contracting officer's decision on the later settlement proposal, this court is without jurisdiction to consider it. *See general-*

*ly Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 645 F.2d 966 (1981). Moreover, we further note that the complaint prays only for the $5,244, excepting interest and attorneys fees, contained in the initial settlement proposal.

regulations of DAR Section VIII (32 C.F.R. § 8–000 to § 8–811), incorporated by reference into plaintiff's contract, to resolve this threshold issue. At the outset, we note that paragraph 18, *i.e.*, the Termination for Convenience clause, of the General Provisions, which was made a part of plaintiff's contract by the contract-purchase order itself as well as the modification orders partially terminating said contract, states that "[i]f this contract is for supplies and is ... terminated [for the convenience of the government], the Contractor *shall* be compensated in accordance with Section VIII of the Defense Acquisition Regulations in effect on this contract's date." (emphasis added). Thus, it is clear beyond cavil that the Termination for Convenience clause foresaw contractor costs resulting from such a termination and by the use of the word "shall" unquestionably contemplated the compensation of those costs by the government. Section VIII of the DAR underscores this policy of compensation for costs allocable to the *terminated portion of the contract.* In this connection, at 32 C.F.R. § 8–301(a), it states in relevant parts as follows:

A settlement should compensate the contractor fairly *for the work done and the preparations made* for the terminated portions of the contract, including an allowance for profit thereon which is reasonable under the circumstances.

(emphasis added). These regulations governing termination claims, applicable to fixed-price contracts, as here, clearly allow for compensation of costs to the contractor incurred by reason of the termination—in other words, *costs allocable to the terminated portion of the contract. See also Askenazy Construction Co.*, 78–2 BCA ¶ 13,402 (1978) (after partial termination, contractor entitled to submit termination claim). Here, we note that in its subsequent filings, with regards to the motions in issue, plaintiff has alternatively argued that "the termination claim was for compensation for continuing work after the partial termination of subject contract." Plaintiff's Motion for Summary Judgment, p. 1. To alleviate the confusion resulting from plaintiff's amalgamation of the two

concepts, *i.e.*, costs allocable to the *terminated portion* of the contract, and costs allocable to the *continued portion* of the contract, we turn now to focus on the document actually submitted by Precision to the contracting officer which was styled as a "Settlement Proposal," and to the operative regulation defining the term "settlement proposal." That regulation is found at 32 C.F.R. § 8–101.20, and provides as follows:

Settlement proposal means a termination claim submitted by a contractor or subcontractor in the form, and supported by the data, required by this Section.

*Id.* "Termination claim" is broadly defined at § 8–101.25 as follows: *"any* claim by a contractor ... permitted by the terms of a prime contract, for compensation for the termination, in whole or in part, of the prime contract ..., and *any* other claim which this Section authorizes to be asserted and settled in connection with a termination settlement" (emphasis added). Thus, it can be seen that these sections, defining a "Settlement Proposal" as a "termination claim" contemplating "any claim by a contractor" permitted by a prime contract, clearly envisions compensation of costs to the contractor due to termination of the contract for convenience. This conclusion is apparently valid, whereas here the prime contract and modifications provide that the contractor "shall be compensated in accordance with Section VIII of [the DAR]," and that section in fact provides for compensation of certain costs.

In order to determine *which* of the two contractor claims, *supra*, would be properly permitted by the terms of the *prime* contract, we next turn to the contract's incorporated general provision at paragraph 18 and the regulations in Section VIII at § 8–701. First, paragraph 18 states that subsequent to the convenience termination "the Contractor shall be compensated in accordance with Section VIII of the Defense Acquisition Regulations *in effect on this contract's date*" (emphasis added). Second, the version of § 8–701 that was in effect on October 20, 1982, the date of contract termination, is styled the

"Termination Clause for Fixed–Price Contracts," and states:

> Except as otherwise permitted by 8–705, the clause in 7–103.21(b) shall be used in any fixed price contract in excess of $10,000 for supplies....

As referenced above, § 8–705.1(a) allows the use of the short form termination clause found at § 7–103.21(a) but *only* for fixed-price supply contracts *not* exceeding $10,000. Clearly then, the termination clause found at § 7–103.21(b) is controlling in plaintiff's case since the fixed-price supply contract here involved was in excess of $10,000, *i.e.*, $22,500.

Under the applicable termination for convenience clause, § 7–103.21(b), we find therein the instructions to insert the following operative provisions into the contract (in accordance with § 8–701(a)):

> (c) After receipt of a Notice of Termination, the Contractor shall submit to the Contracting Officer his *termination claim*, in the form and with certification prescribed by the Contracting Officer. *Such claim shall be submitted* promptly but *in no event later than one year from the effective date of termination,* unless one or more extensions in writing are granted by the Contracting Officer, upon request of the Contractor made in writing within such one year period or authorized extension thereof. However, if the Contracting Officer determines that the facts justify such action, he may receive and act upon any such termination claim at any time after such one year period or any extension thereof. Upon failure of the Contractor to submit his termination claim within the time allowed, the Contracting Officer may determine, on the basis of information available to him, the amount, if any, due to the Contractor by reason of the termination and shall thereupon pay to the Contractor the amount so determined.
>
> (d) Subject to the provisions of paragraph (c), the Contractor and the Contracting Officer may agree upon the whole or any part of the amount or amounts to be paid to the Contractor *by reason of the total or partial termination of work pursuant to this clause,* which amount or amounts may include a reasonable allowance for profit on work done, *provided,* that such agreed amount or amounts, exclusive of settlement costs, shall not exceed the total contract price as reduced by the amount of payments otherwise made and as further reduced by the contract price of work not terminated.

> \* \* \* \* \* \*

> (i) If the termination hereunder be *partial,* the Contractor *may* file with the Contracting Officer a claim for *an equitable adjustment* of the price or prices specified in the contract relating to the continued portion of the contract (the portion not terminated by the Notice of Termination), and such equitable adjustment as may be agreed upon shall be made in such price or prices. Any claim by the Contractor for an equitable adjustment under this clause must be asserted within *ninety (90) days from the effective date of the termination notice,* unless an extension is granted in writing by the Contracting Officer.

(emphasis added). After a close reading of the above intricate provisions, we can make several observations. First, and most obvious, the contracting officer erred when he stated, in his denial of plaintiff's claim, that the contract clause did not provide for an equitable adjustment of the price specified in the contract relating to the *continued* portion of the contract. Second, under this termination for convenience clause, Precision had two options under Section VIII of the DAR after receipt of notice of the partial termination: (i) to file a "termination claim" for costs allocable to the *terminated portion* of the contract and incurred due to the convenience termination *within one year* of the effective date of the termination; or (ii) to file a claim for an equitable adjustment *of the price specified in the continued (i.e., not terminated) portion* of the contract within 90 days of the effective date of the termination. *Compare Joseph Sternberger, Trustee in Bankruptcy for Spenco, Inc. v. United States,* 185 Ct.Cl. 528, 539, 401 F.2d 1012, 1018–19 (1968). *See* subsections (c) and (i),

respectively, of § 7–103.21(b). Thus, depending on the option exercised by plaintiff, it had either *one year* from the termination date to submit a "termination claim" *or 90 days* from that date to submit a claim for an "equitable adjustment."

Again, the regulations of Section VIII shed light on the proper denomination of plaintiff's claim. Section 8–307.1 governs the submission of settlement proposals (*i.e.*, termination claims) and provides, in pertinent part, at subsection (a) as follows: "[s]ubject to the provisions of the Termination clause in the contract, the contractor should promptly submit to the TCO [terminating contracting officer] a settlement proposal setting forth the amount claimed to be due by reason of the termination." Said section also provides at subsection (d) that: "DD Form 831 ... may be used when the total claim is less than $10,000 unless otherwise instructed by the TCO." Precision duly complied by submitting Form DD 831, on which it claimed certain costs allocable to the *terminated* portion of the contract, to the contracting officer on December 1, 1983, and within one year of the dates of both contract modifications No. P0001 and No. P0002.

Section VIII also allows for the compensation of equitable adjustment claims. The termination clause at § 7–103.21(b)(i) indicates, on the other hand, that the contractor *may* submit a claim for an equitable adjustment of the contract price relating to the non-terminated or the continued portion of the contract. Section VIII at § 8–309 governs the compensation of claims for equitable adjustments in contract unit prices relating to the *continued* portion of the contract. At § 8–309(a) the regulation requires that an equitable adjustment claim be submitted on DD Form 633, Contract Pricing Proposal. (This requirement is obviously contra-indicated to the obligation to file DD Form 831 in connection with the "termination claim.") The court observes, as of paramount significance, that § 8–309(c) admonishes the terminating contract officer to assure himself "that no portion of the costs included in the equitable adjustment for the *continued* portion of the contract are included in the

termination settlement" (emphasis added). This directive undoubtedly indicates that the contractor could assign specific cost increases *either* to an equitable adjustment claim or a termination claim, but must choose one form or the other to avoid the probable result of double compensation for the same costs.

### B. *Focus of Plaintiff's Motion*

■ On the facts before the court, it is patently clear that plaintiff did *not* submit to the contracting officer DD Form 633, the Contract Pricing Proposal, as required by § 8–309(a) in order to claim an equitable adjustment in the contract price of the continued portion of the contract. Instead, plaintiff unmistakably exercised its option to assign the cost increases, resulting from the convenience termination, to the terminated portion of the contract by filing DD Form 831, the Settlement Proposal, with the terminating contracting officer. This act was accomplished on December 1, 1983, well within one year following the effective termination dates of January 13, 1983 and January 24, 1983. § 7–103.21(b)(c) and § 8–307.1:

■ In order to determine whether the charges claimed by Precision on the settlement proposal form were allowable as proper termination costs subject to reimbursement, we again refer to the termination for convenience clause at § 7–103.21(b). There at subsection (f) the regulation specifies that the costs claimed must be in accordance with Section XV of the Armed Services Procurement Regulations (currently known as the DAR), found at 32 C.F.R. §§ 15–000 to 15–809.5. Specifically, § 15–205.42 delineates the permissible termination costs, as applicable here, that are allowed to be reimbursed at subsections (c) and (f) of § 7–103.21(b). Initially, this provision (§ 15–205.42) echoes the general policy of government responsibility for termination costs found within Section VIII wherein the former states that: "[c]ontract terminations generally give rise to the incurrence of costs ... which would not have arisen had the contract not been terminated." Further, the application of

the cost principles of Section XV are subject to the general policies of fairness of § 8–301. *See* § 8–214; *see also Codex Corp. v. United States*, 226 Ct.Cl. 693, 699 (1981). At § 15–205.42(c), the regulation further states that "initial costs" are allowable as termination costs that qualify for reimbursement. "Initial costs" include both *starting load costs and preparatory costs*. Starting load costs, as defined at § 15–205.42(c)(1), are "costs of a nonrecurring nature arising in the early stages of production and not fully absorbed because of the termination." Said regulation further states that:

Such costs may include the cost of labor and material, and related overhead attributable to such factors as—

(i) excessive spoilage resulting from inexperienced labor,

(ii) idle time and subnormal production occasioned by testing and changing methods of processing,

(iii) employee training, and

(iv) unfamiliarity or lack of experience with the product, materials, manufacturing processes and techniques.

Following thereafter, at § 15–205.42(c)(2), preparatory costs are also specifically defined:

Preparatory costs are costs incurred in preparing to perform the terminated contract, including costs of initial plant rearrangement and alternations, management and personnel organization, production planning and similar activities, but excluding special machinery and equipment and starting load costs.

In addition to "initial costs," *supra*, certain settlement expenses are allowable as defined in pertinent parts of § 15–205.42(f)(1):

(f)(1) Settlement expenses including the following are generally allowable:

(i) accounting, legal, clerical, and similar costs reasonably necessary for the preparation and presentation to contracting officers of settlement claims and supporting data with respect to the terminated portion of the contract, and for the termination and settlement of subcontracts[.]

DD Form 831 filed by Precision with the contracting officer on December 1, 1983, reflect unequivocally that plaintiff claimed the following costs as items designated on a pre-printed line as "other *charges* including profits and settlement expenses" (emphasis added) allocable to the terminated portion of the contract which were detailed more specifically in the explanation section as follows:

| | |
|---|---:|
| Due to reduction in quantity, cost increased by $1,500 per unit (2 × $1,500) = | $3,000 |
| Manufacturing overhead applied— based on cost 55.62% × 3,000 = | 1,669 |
| Legal fees (3.5 hours × $100) = | 350 |
| Accounting fees (5 hours × $45) = | 225 |
| Total | $5,244. |

The first item, cost increase per unit, reflects the high unit cost incurred during the early phase of production. A letter from the subcontracting company that plaintiff used to tool the gearshaft spurs, Dunco Precision Machine, dated June 21, 1985, stated that the increase per unit was due to "[s]et-up and tooling costs for [the] two ... remained the same as for [the] 18...." This cost of $3,000 falls within the broad characterization at § 15–205.42(c) of initial costs, *i.e.*, starting load costs, as "costs of a non-recurring nature arising in early stages of production and not fully absorbed because of the termination," and we so hold. The second item represents $1,669 of manufacturing overhead charge calculated on the basis of the related preparatory cost. This cost would not be allowed under termination costs because the regulation limits allowable initial costs and states that "[w]hen initial costs [*i.e.*, preparatory costs] are included in the settlement proposal as a *direct charge*, such costs shall *not* also be included in overhead." § 15–205.42(c)(5). Thus, since Precision has included the preparatory cost of $3,000 as a *direct charge* allocable to the terminated contract portion on the settlement proposal form, it cannot also, under the foregoing regulation, include an overhead charge calculated on that amount. Finally, the third and fourth items on the settlement proposal are legal and accounting fees. These items do fit within the

characterization as termination costs under § 15–204.42(f) as permissible "settlement expenses." *See also Acme Process Equipment Co. v. United States,* 171 Ct.Cl. 251, 262, 347 F.2d 538, 545, *motion for reconsid. denied,* 171 Ct.Cl. 251, 351 F.2d 656 (1965) (legal expenses incurred to obtain settlement allowed as reimburseable). Therefore, given the foregoing, it is clear to this court that Precision did indeed file an efficacious and timely termination claim for settlement with the contracting officer on December 1, 1983, and we so hold. Further, plaintiff certified on said settlement proposal that it only included charges that were allocable to the terminated portion of the contract. Given this fact, we find that plaintiff must prevail on its partial summary judgment motion regarding defendant's liability to compensate Precision for its termination costs in accordance with Section VIII of the DAR, as defendant is obligated to do under the subject contract.

### III.  Defendant's Cross–Motion

█ Defendant has argued that it is entitled to a summary judgment dismissing plaintiff's claim because (i) plaintiff's claim is for an equitable adjustment and, moreover, was untimely filed; and (ii) if the court should characterize plaintiff's claim as a termination claim, it was not supported by appropriate documentation, as required by the regulation(s). Defendant's first argument is without merit and thus fails because we have held, for the reasons stated above, that plaintiff filed a valid termination claim, and not an equitable adjustment claim. Moreover, defendant has conceded that if plaintiff's claim is "viewed as a termination claim [then] it would have been filed timely." *See* Defendant's Cross–Motion for Summary Judgment. Defendant's second argument regarding supporting documentation must likewise fail because the regulations do not put a burden on plaintiff to submit such documentation, *as argued,* simultaneously with the submission of the termination claim. Additionally, we find that defendant has not pointed to a' *specific* regulation that imposes such a burden on plaintiff, and we are not inclined to grant a dismissal based on a vague conclusory allegation such as defendant makes here. The regulations pointed to by defendant at § 8–307.2 merely state the two acceptable bases for calculating the termination claim. In fact, the regulations at § 8–307.1(e) state that the Schedule of Accounting Information, DD Form 546, which ordinarily must accompany every claim for reimbursement of costs, is *not* required when the Short Form Settlement Proposal, DD Form 831, is used. And DD Form 831 itself merely instructs the contractor to *"retain* for the applicable period specified in the prime contract all papers and records relating to this proposal for future examination ... by the contracting officer." (emphasis added). Therefore, we find no requirement to submit simultaneous documents supporting its termination claim imposed by the regulations at Section VIII as urged by defendant. Hence, we must deny defendant's cross-motion. Moreover, the most we can say for the defendant's position with respect to alleged absence of adequate documentation is that it is premature given the fact that the bifurcated issue here addresses only liability and not quantum.

### IV.  Conclusion

For the foregoing reasons, we grant plaintiff's partial motion for summary judgment, as to liability, and deny defendant's cross-motion. In order to expeditiously resolve the factual issue(s) of quantum of reimbursement due to plaintiff, and avoid the improper utilization of time, we hereby allow the parties ten (10) days from the date of this opinion, to and including May 31, 1988, to advise the court through a joint formal report whether they have reached a definitive resolution of plaintiff's claim via a stipulated settlement agreement. If there is no *definitive* resolution by May 31, 1988, the following pretrial schedule, pursuant to the RUSCC, shall immediately become operative:

(1) Concurrent discovery shall continue until June 30, 1988;

(2) Plaintiff's pretrial submissions shall be filed on or before July 15, 1988;

(3) Defendant's pretrial response and submissions shall be filed on or before July 20, 1988;

(4) Plaintiff's pretrial reply shall be filed on or before July 25, 1988;

(5) Submissions shall be timely served by in-hand delivery or overnight mail service on the adverse party and the court;

(6) The pretrial conference shall be held at 10:00 a.m. on August 1, 1988, in open court; and

(7) Trial shall commence at 10:00 a.m., August 8, 1988, either at the National Courts Building, Washington, D.C., or at the site where a majority of the witnesses reside.

IT IS SO ORDERED.