**NICON, INC., Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 02–5097.

United States Court of Appeals,
Federal Circuit.

June 10, 2003.

---

termination for convenience settlement by some other method of allocation.

James S. Ganther, Ganther Law Office, P.A., of Tampa, FL, argued for plaintiff-appellant.

Allison A. Page, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were David M. Cohen, Director; and Donald E. Kinner, Assistant Director. Of counsel was Thomas D. Dinackus, Attorney.

Before NEWMAN, CLEVENGER, and RADER, Circuit Judges.

Opinion for the court filed by Circuit Judge CLEVENGER. Opinion concurring in part filed by Circuit Judge PAULINE NEWMAN.

CLEVENGER, Circuit Judge.

Nicon, Inc., seeks damages for unabsorbed home office overhead resulting from a delay period between award of a government contract and termination for convenience, during which the government never issued a notice to proceed and Nicon was allegedly forced to remain on "standby." On cross-motions for summary judgment, the Court of Federal Claims granted the government's motion, holding that Nicon could not recover damages for unabsorbed home office overhead under the *Eichleay* formula because the formula could not be modified to fit a fact situation where the contractor has not yet begun to perform. *Nicon, Inc. v. United States,* 51 Fed.Cl. 324 (Fed.Cl. 2001). We vacate the summary judgment in favor of the government and remand for further proceedings to determine if Nicon may recover unabsorbed overhead damages as part of its

I

Nicon is a small contractor from Tampa, Florida. On March 30, 1998, the Department of the Army, Mobile District Corps of Engineers, awarded Nicon a $1.4 million contract to repair Dorm 371 at MacDill Air Force Base in Hillsborough County, Florida. On April 3, 1998, a disappointed bidder filed a bid protest, which suspended action on the contract before any of the repair work was commenced. On April 24, 1998, the government notified Nicon of the protest and instructed it to "take no further actions as to the preparation and forwarding of submittals to the Resident Office." Nicon responded immediately, informing the government that it would "cease any further mobilization efforts associated with the . . . project."

The bid protest was dismissed on July 15, 1998, but the government never directed Nicon to proceed with the contract. On October 14, 1998, Nicon wrote a letter to the government to complain about the delay in issuing the notice to proceed and apparently received no response. Nicon wrote again to request permission to proceed on November 12, 1998, but the government still failed to issue a notice to proceed. After this second letter, Nicon met with government representatives to discuss revised pricing for the contract. However, the government then terminated the contract for convenience on January 12, 1999. This termination occurred before the government ever issued a notice to proceed and before Nicon secured payment and performance bonds for the contract. A period of 107 days elapsed between the March 30, 1998, award of the contract to Nicon and the July 15, 1998, dismissal of the bid protest, and another

181 days (for a total of 288 days) elapsed thereafter before the government's termination of Nicon's contract for convenience on January 12, 1999.

After the termination, Nicon submitted a Termination Settlement Proposal to the government. In the proposal, it sought direct costs and associated overhead and profit, as well as unabsorbed home office overhead for the time period between award of the contract and termination. As an allocation method, Nicon used a modified version of the *Eichleay* formula to calculate its unabsorbed home office overhead damages. After negotiation, Nicon was awarded $184,757 in direct costs, related overhead, and profit. However, the contracting officer denied Nicon's claim for $387,513 in unabsorbed home office overhead for the 288–day alleged delay period.

Nicon then filed suit in the Court of Federal Claims to recover the unabsorbed overhead damages it had sought in its termination settlement proposal and which the contracting officer had denied. Its complaint contained two counts: Count I was for pre-termination delay damages, and Count II was for post-termination delay damages. Upon cross-motions for summary judgment as to Count I, the Court of Federal Claims granted summary judgment in favor of the government, concluding that Nicon was seeking to apply an alternative to the accepted *Eichleay* formula and that it could not modify the formula as Nicon requested. The Court of Federal Claims later granted Nicon's motion to dismiss Count II.

Nicon appeals the Court of Federal Claims's decision, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II

This appeal is from the Court of Federal Claims's grant of summary judgment in favor of the government. We review a grant of summary judgment by the Court of Federal Claims *de novo*, *Gump v. United States*, 86 F.3d 1126, 1127 (Fed.Cir. 1996), drawing all factual inferences in favor of the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the course of performance of any contract, a contractor incurs both direct and indirect costs. Direct costs are those costs that are directly attributable to the performance of a specific contract and can be traced specifically to that contract. *Charles G. Williams Constr., Inc. v. White*, 271 F.3d 1055, 1057–58 (Fed.Cir.2001). Indirect costs include such things as home office overhead, defined as costs "that are expended for the benefit of the whole business, which by their nature cannot be attributed or charged to any particular contract." *Altmayer v. Johnson*, 79 F.3d 1129, 1132 (Fed.Cir.1996). Generally, a contractor recovers these indirect costs by allocating a proportionate share to each of its contracts. *C.G. Williams*, 271 F.3d at 1058. However, when the government causes a delay or suspension of performance, this "decreases the stream of direct costs against which to assess a percentage rate for reimbursement." *C.B.C. Enters., Inc. v. United States*, 978 F.2d 669, 671 (Fed.Cir.1992). In such a situation, a portion of the home office overhead is "unabsorbed."

■ The *Eichleay* formula is used to "equitably determine allocation of unabsorbed overhead to allow fair compensation of a contractor for government delay." *Wickham Contracting Co. v. Fischer*, 12 F.3d 1574, 1578 (Fed.Cir.1994). The formula, which was originally set forth by the Armed Services Board of Contract Appeals in *Eichleay Corp.*, 60–2 B.C.A. (CCH) ¶ 2688, at 13,568 (A.S.B.C.A. July 29, 1960), determines a contractor's dam-

ages for unabsorbed home office overhead using three steps:

(1) (Contract billings Total billings for contract period) Total overhead for contract period = Overhead allocable to the contract

(2) Allocable overhead Days of performance = Daily contract overhead

(3) Daily contract overhead Days of delay = Amount recoverable

*Capital Elec. Co. v. United States,* 729 F.2d 743, 747 (Fed.Cir.1984).

 Before using the *Eichleay* formula to quantify an amount of damages, the contractor must meet certain strict prerequisites for the application of the formula. First there must have been a government-caused delay of uncertain duration. *Interstate Gen. Gov't Contractors, Inc. v. West,* 12 F.3d 1053, 1056 (Fed.Cir. 1993). The contractor must also show that the delay extended the original time for performance or that, even though the contract was finished within the required time period, the contractor incurred additional costs because he had planned to finish earlier. *P.J. Dick, Inc. v. Principi,* 324 F.3d 1364, 1370 (Fed.Cir.2003). Finally, the contractor must have been on standby and unable to take on other work during the delay period. *Interstate Gen.,* 12 F.3d at 1056–57. If the contractor makes out a prima facie case on the required prerequisites, then the burden of production shifts to the government to show either that it was not impractical for the contractor to obtain "replacement work" during the delay, or that the contractor's inability to obtain or perform replacement work was caused by a factor other than the government's delay. *Melka Marine, Inc. v. United States,* 187 F.3d 1370, 1375 (Fed.Cir. 1999).

The Court of Federal Claims did not base its decision on the eligibility prerequisites, the facts of which the parties appear to dispute. The Court of Federal Claims instead concluded that even if the prerequisites were met, it could still grant summary judgment based on the "proper construction and use of the *Eichleay* formula," which is a question of law. The court explained that "even assuming Nicon could show that it met the prerequisites for unabsorbed overhead established by the Federal Circuit, the formula that Nicon proposes is not the *Eichleay* formula," and thus concluded: "Because Nicon seeks unabsorbed overhead under a formula that is not recognized by the Federal Circuit, its claim must be rejected."

This case presents us with a unique factual situation. In the typical cases dealing with the application of the *Eichleay* formula, performance of the contract does eventually occur or resume after the government-caused delay. Here, however, the government simply terminated the contract after a lengthy delay, and the contractor was never permitted to perform any aspect of the contract. Nicon recognizes that this is an unusual situation that does not fit neatly into the *Eichleay* formula as it has been propounded and applied by this court. Nicon admits that it has no actual "contract billings" or "days of performance" to use in the formula, but proposes that we must substitute constructive figures instead. It asserts that we should "assume, for the purposes of fairly allocating overhead, that had Nicon been permitted to commence the repair work on schedule it would have completed the project within the time required by the contract and it would have received the full amount of the contractual billings."

Nicon argues that the Court of Federal Claims applied the *Eichleay* formula in an overly mechanistic fashion in reaching the conclusion that the formula cannot be adapted to govern the facts of this case. The Court of Federal Claims refused to

substitute the original contract price for "contract billings" in the formula and refused to substitute the anticipated period of performance for "days of performance." According to Nicon, this effectively adds the requirement that performance has begun as an additional prerequisite to the formula.

■ We agree with the Court of Federal Claims that constructive figures may not be substituted into the *Eichleay* formula and that use of the formula is limited to situations in which contract performance has begun and has been suspended by the government, causing the performance to take longer than originally anticipated. The formula is not intended to simply compensate for any government-caused delay; rather, *Eichleay* damages are only available when the delay causes contract *performance* to require more time than originally anticipated. *See C.G. Williams*, 271 F.3d at 1058; *see also P.J. Dick*, 324 F.3d at 1370 (focusing on the requirement that performance time be extended); *West v. All State Boiler, Inc.*, 146 F.3d 1368, 1378 (Fed.Cir.1998) (stating that it is "clear that a contractor is only injured with respect to indirect costs when the performance period of a contract is extended as a result of government-caused suspension and not because of the suspension *per se* "). The focus in our precedent has been on the period of time by which performance was extended as the compensable injury in awarding *Eichleay* damages. In a situation in which there is no performance, as in this case, there is no way to determine the length of time by which the government's delay would have extended performance. Damages are to be "awarded for the period of time by which overall performance is extended, rather than the period of the suspension." *All State Boiler*, 146 F.3d at 1378.

Nicon wishes for us to assume that, although it never actually began to perform the contract, it would have taken the entire time period allowed for by the contract to finish, thereby making the extension equal to the amount of time the government waited between award and termination. It also wishes for us to assume that it would have been paid exactly the full contract price. This simply asks us to make too many assumptions and stretches the *Eichleay* formula beyond the circumstances for which it was intended. Use of the *Eichleay* formula is an extraordinary remedy, and we have been very reluctant to make a "drastic shift in the circumstances under which the Eichleay formula has been available." *C.B.C. Enters.*, 978 F.2d at 675.

The Court of Federal Claims was therefore correct in concluding that the *Eichleay* formula is only applicable in situations in which contract performance has begun. However, that does not mean that a contractor, who is required to remain on standby because of a government-caused delay but is never allowed to begin performance, may not receive some of its unabsorbed home office overhead as part of its termination for convenience settlement by some other method of allocation. We have said a number of times in our cases that the *Eichleay* formula is the "only proper method of calculating unabsorbed home office overhead. No other formula may be used." *Wickham*, 12 F.3d at 1575; *see also Melka Marine*, 187 F.3d at 1374–75 ("The *Eichleay* formula is the only means approved in our case law for calculating recovery for unabsorbed home office overhead."); *E.R. Mitchell Constr. Co. v. Danzig*, 175 F.3d 1369, 1372 (Fed.Cir.1999). However, these statements must be read in light of the factual context in which they arose; they were all made in cases in which contract performance had started and had been interrupted by government

delay. They are not applicable to a situation in which the contract is terminated before the commencement of performance.

### III

■ When contract performance has not begun, but all of the other strict requirements for entitlement to home office overhead are met, there is no bar to the award of home office overhead in a termination for convenience settlement, provided a reasonable method of allocation is available on the particular facts of the case.

■ A contractor may seek to recover damages for unabsorbed overhead as part of the termination for convenience settlement, and, if the contracting officer denies these damages, appeal the unsatisfactory settlement amount. *Cf. James M. Ellett Constr. Co. v. United States,* 93 F.3d 1537, 1542–46 (Fed.Cir.1996) (explaining the process by which the contracting officer's rejection of a termination settlement proposal can become an appealable claim). The burden is then on the contractor to show that it is actually entitled to a settlement amount in excess of that determined by the contracting officer. *Gen. Dynamics Land Sys., Inc.,* 02–1 B.C.A. (CCH) ¶ 31,- 659, at 156,411 (A.S.B.C.A. Nov.20, 2001). Although the burden is on the contractor to show entitlement to a larger settlement amount, it must be kept in mind that the overall purpose of a termination for convenience settlement is to fairly compensate the contractor and to make the contractor whole for the costs incurred in connection with the terminated work. *Freedom Elevator Corp.,* 85–2 B.C.A. (CCH) ¶ 17,964, at 90,032 (G.S.B.C.A. Feb.28, 1985). Settlement agreements are intended to compensate the contractor fairly, which "is a matter of judgment and cannot be measured exactly." 48 C.F.R. § 49.201(a) (2002); *see also id.* § 49.201(c) ("Cost and accounting data may provide guides, but are not rigid measures, for ascertaining fair compensation."); *Codex Corp. v. United States,* 226 Ct.Cl. 693, 698 (1981) (discussing the fairness policy embodied in the predecessor to § 49.201). The regulations provide that the cost principles in Part 31.2 of the Federal Acquisition Regulations ("FAR") are to "be used in asserting, negotiating, or determining costs relevant to termination settlements," but they are subject to the general fairness principles of section 49.201(a). 48 C.F.R. § 49.113 (2002).

■ Although unabsorbed overhead is not specifically listed in the FAR's "Termination for Convenience of the Government (Fixed–Price)" clause as one of the costs that will be paid under a settlement, it is also not excluded anywhere and could be asserted under the category of "costs incurred in the performance of the work terminated, including *initial* cost and preparatory expense allocable thereto." 48 C.F.R. § 52.249–2(g)(2)(i) (2002) (emphasis added). Furthermore, although unabsorbed overhead is not mentioned in 48 C.F.R. § 31.205–42 as a cost peculiar to a termination situation, the costs listed there "are to be used in conjunction with the other cost principles in subpart 31.2," none of which would appear to prevent, as a matter of law, the award of unabsorbed overhead damages in a termination for convenience settlement if they are properly allowable and allocable. Unabsorbed overhead damages have been held to be allowable in the context of a termination for convenience settlement, *see Worsham Constr. Co.,* 85–2 B.C.A. (CCH) ¶ 18,016, at 90,369 (A.S.B.C.A. Mar.22, 1985), and we see nothing in the regulations that would preclude the inclusion of unabsorbed overhead damages in the settlement if the factual situation is one in which a reasonable allocation method can be discerned. This

is especially so in light of the FAR's admonition that "[t]he use of business judgment, as distinguished from strict accounting principles, is the heart of a settlement." 48 C.F.R. § 49.201(a) (2002). The FAR also provides that "[i]n appropriate cases, costs may be estimated, differences compromised, and doubtful questions settled by agreement." *Id.* § 49.201(c). In construing these regulatory guidelines, it is "axiomatic that ... one must strike a balance between the need for technical compliance with regulatory requirements and the need for basic fairness." *Spectrum Leasing Corp. v. Gen. Servs. Admin.*, 95-1 B.C.A. (CCH) ¶ 27,317, at 136,185-86 (G.S.B.C.A. Nov.8, 1994).

▇ One possible method a contractor in Nicon's situation may use to obtain unabsorbed overhead damages as part of its termination for convenience settlement is an equitable adjustment under the contract's suspension of work clause. The suspension clause provides for adjustments when:

> performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted (1) by an act of the Contracting Officer in the administration of [the] contract, or (2) by the Contracting Officer's failure to act within the time specified in this contract (or within a reasonable time if not specified)....

48 C.F.R. § 52.242-14 (2002). Even if there is no date set in the contract by which a notice to proceed must issue, there is an implied obligation on the part of the government to issue the notice to proceed within a reasonable time. *Ross Eng'g Co. v. United States*, 92 Ct.Cl. 253 (1940). Therefore, damages for unreasonable delay in issuing the notice to proceed may be recovered under the suspension clause. *See Triax–Pacific v. Stone*, 958 F.2d 351, 354-55 (Fed.Cir.1992) (noting that a delay in issuing a notice to proceed is not remediable as a breach but that costs may be recovered as an equitable adjustment under the suspension of work clause). Damages for a portion of unabsorbed overhead may be a part of this recovery. *See M.E. Brown*, 91-1 B.C.A. (CCH) ¶ 23,293, at 116,817-19 (A.S.B.C.A. Aug.28, 1990) (finding that the contractor was entitled as part of its termination for convenience settlement to an adjustment under the suspension clause including unabsorbed overhead to compensate for the government's unreasonable delay in issuing the notice to proceed); *see also Marine Constr. & Dredging, Inc.*, 95-1 B.C.A. (CCH) ¶ 27,286, at 27,285-86 (A.S.B.C.A. Oct.31, 1994).

In this case, Nicon sought damages for unabsorbed home office overhead in its Termination Settlement Proposal to compensate it for the government's delay. The Defense Contract Audit Agency audited Nicon's proposal, and concluded that "based on the Eichleay formula, the fixed overhead costs are not allocable, hence, the unabsorbed overhead costs are not allowable." The Audit Agency, citing *Worsham Construction Co.*, 85-2 B.C.A. (CCH) ¶ 18,-016 (A.S.B.C.A. Mar.22, 1985), stated that unabsorbed overhead costs are allowable in the context of a termination for convenience, but that in this particular case, such costs were not allocable and hence not allowable. The contracting officer agreed and denied damages for unabsorbed home office overhead. As explained above, we agree that such costs are not allocable based on the *Eichleay* formula, as the formula is only applicable in situations in which contract performance has begun, but we do not agree that there is no other method of allocation possible under these circumstances. It would be inappropriate in the termination for convenience setting, where fairness to the contractor is the touchstone, to rigidly apply a

formula developed in different factual circumstances and thereby deny the contractor fair compensation for unabsorbed home office overhead. Indeed, such would be contrary to the letter and spirit of 48 C.F.R. § 49.201(a).

 However, a contractor seeking unabsorbed overhead damages as part of its termination for convenience settlement must still meet certain requirements in order to be entitled to recover any of its unabsorbed overhead. The contractor must show that, before the government terminated the contract, there was a period of government-caused delay of uncertain duration. If the contractor itself played a role in the delay or if the delay was the fault of someone or something beyond the government's control, then there is no entitlement to damages for unabsorbed overhead for that delay period. *See Sauer, Inc. v. Danzig,* 224 F.3d 1340, 1348 (Fed.Cir.2000). Also, the contractor must show that it was on standby during the period of the delay because this is what gives rise to unabsorbed overhead. A contractor's overhead is absorbed by allocating a portion of it to each contract, and when there is a delay on a contract during which no work is performed, that contract is not absorbing its share of overhead. *See Wickham,* 12 F.3d at 1577–78 (explaining the general method by which overhead is absorbed). If the contractor had the ability to take on qualifying replacement work, *see Melka Marine,* 187 F.3d at 1378–79 (explaining what qualifies as replacement work), overhead would then be allocated to those new contracts. Therefore, if the contractor was not truly on standby, but could have taken on replacement work, the overhead is not properly treated as unabsorbed.

On remand in this case, the Court of Federal Claims must determine if Nicon meets the requirements of government-caused delay and standby. Nicon seeks damages for the entire period between award of the contract and termination for convenience. However, there was a bid protest extending from the period of April 3, 1998, through July 15, 1998. It is questionable that this portion of the delay was solely the fault of the government, and therefore questionable whether Nicon may recover damages for this period. These questions await an answer on remand. The record also shows that Nicon did take on other contracts during the period of delay, and it must be determined on remand if these contracts qualify as replacement work that prevented Nicon from being on standby. The Court of Federal Claims must also determine whether, on the facts of this case, there is a reasonable method of allocating some portion of Nicon's unabsorbed overhead for the delay period to this contract, as the ASBCA found in *M.E. Brown,* 91–1 B.C.A. (CCH) at 116,818–19, 1990 WL 158914. In its brief to this court, Nicon asserts that "[a] comparison of the value of Nicon's various contracts can be made to allocate a fair portion of its overhead costs to the contract in question at bar." It must be determined on remand if the facts of this case permit the allocability of the unabsorbed overhead, keeping in mind the fairness principles that govern in the termination for convenience context. *See Codex,* 226 Ct.Cl. at 698; 48 C.F.R. § 49.201(a) (2002).

Finally, we note that there are also other steps that a contractor could take to protect itself against damages resulting from a period of pre-performance delay and avoid reliance on the termination for convenience settlement to obtain its recovery. There is nothing to stop a contractor from negotiating with the government for financial protection in case of delay arising from a bid protest or failure to issue a

notice to proceed in a timely manner. *See, e.g., C.B.C. Enters.*, 978 F.2d at 670 (discussing the agreement between the contractor and the government to calculate a specific rate of additional home office overhead for certain contract modifications that extended the work performance period). Indeed, as bid protests are not uncommon, it may be wise for a contractor to try to protect itself against such pre-performance delays by negotiation.

## CONCLUSION

■ Our holding here is narrow. We reaffirm that the *Eichleay* formula as it is set forth in our precedent is the exclusive formula for the calculation of damages for unabsorbed overhead due to a period of government-caused delay in situations in which contract performance has begun. The *Eichleay* formula was created and intended for a factual situation in which a contractor's performance has begun and then been delayed or suspended for an uncertain duration because of government fault, thereby extending the time period of performance. The formula must be strictly applied and may not be modified to make it apply to situations in which there is no performance on the contract.

■ However, in situations in which contract performance has not yet begun, but the government terminates the contract for convenience after a period of delay, the contractor is not left without a remedy. The contractor may recover unabsorbed overhead costs as part of its termination for convenience settlement if a reasonable method of allocation can be determined on the facts of the case and the contractor can otherwise satisfy the strict prerequisites for recovery of unabsorbed overhead costs. We therefore vacate the Court of Federal Claims's grant of summary judgment in favor of the government and remand for further proceedings consistent with this opinion.

## COSTS

No costs.

*VACATED AND REMANDED.*

PAULINE NEWMAN, Circuit Judge, concurring in part.

I agree with the court that the contractor is entitled to establish its damages due to unabsorbed overhead caused by government delay. I part company with my colleagues, however, in their view that the *Eichleay* formula is inapplicable to this case.

Application of the *Eichleay* method of measuring compensation for unreimbursed overhead is not controlled by whether the contract is eventually performed or whether it is eventually terminated without performance. During the period when the contractor is required by the government to stand by, neither the contractor nor presumably the government knows whether the contract will be cancelled eight months later. It is the standby suspension of uncertain duration that creates the situation for which the *Eichleay* formula was devised; whether or not performance had begun before the suspension was imposed does not produce a "drastic shift" in the application of the formula. *C.B.C. Enterprises, Inc. v. United States*, 978 F.2d 669, 675 (Fed.Cir.1992). Precedent does not require that recovery of unabsorbed overhead is measurable by the *Eichleay* formula only if performance had begun before it was suspended.

This court has "specifically acknowledged two prerequisites to application of the Eichleay formula to recover unabsorbed overhead, assuming government-caused and hence 'compensable' delay: (1) that the contractor be on standby and (2)

that the contractor be unable to take on other work." *Interstate Gen. Gov't Contractors, Inc. v. Secretary of the Army*, 12 F.3d 1053, 1056 (Fed.Cir.1993). The court explained that the "proper standby test focuses on the delay or suspension of contract performance for an uncertain duration, during which a contractor is required to remain ready to perform. Standby combined with an inability to take on additional work are the two prerequisites for application of the Eichleay formula, because taken together they prevent the contractor from mitigating unabsorbed overhead when it is incurred." *Id.* at 1058.

The principle of compensation for unreimbursed overhead costs flowing from suspension by the government is not changed by whether there had been partial performance before suspension, and is not changed by the later cancellation of the contract. *See Melka Marine, Inc. v. United States*, 187 F.3d 1370, 1375 (Fed. Cir.1999) ("Home office overhead typically includes accounting and payroll services, salaries for upper-level managers, general insurance, utilities, taxes, and depreciation."); *Interstate*, 12 F.3d at 1058 ("Generally, unabsorbed overhead consists of the time sensitive indirect costs incurred despite construction inactivity on a project. . . ."). Unabsorbed overhead may be incurred when the government-caused delay results in a "disrupt[ion of] the relationship between the contractor's revenue and its overhead costs" that cannot be reasonably mitigated. *Interstate*, 12 F.3d at 1058. The court explained in *C.B.C. Enterprises*, 978 F.2d at 671, that "[t]he Eichleay formula was devised to calculate reimbursable home office overhead costs in the event of suspension of work on a contract, when the suspension decreases the stream of direct costs against which to assess a percentage rate for reimbursement."

Thus, when the government requires that the contractor stand by for a period of uncertain duration, the *Eichleay* formula is a fair measure of compensation for the delay. It is a simplified calculation of the government's share of the indirect and unabsorbed overhead when the contractor is reasonably unable to take on replacement work or make "reductions in home office staff or facilities." *See Wickham Contracting Co. v. Fischer*, 12 F.3d 1574, 1577–78 (Fed.Cir.1994). When contract performance is interrupted, it is irrelevant whether it is interrupted before or after it commenced, and compensable overhead costs, if incurred, are not erased by later cancellation of the contract. The purpose of the *Eichleay* formula is to simplify, not to complicate, the measurement of damages arising from indirect costs.

The *Eichleay* formula is not a matter of legal entitlement; it is simply a mathematical equation for allocation of unreimbursed overhead costs. It is incorrect to promote it to a substantive entitlement limited to an inflexible formula. In *C.B.C. Enterprises*, this court "decide[d] which of two methods [, 'a fixed percentage mark-up of the direct costs incurred,' or 'a constructive daily rate derived using the Eichleay formula,'] should be used to reimburse a contractor for home office overhead costs incurred by reason of a contract extension to perform additional work." 978 F.2d at 671–72. In that case, we held:

> Where no element of uncertainty is imposed on the contractor, use of the Eichleay formula to calculate extended home office overhead is not permissible. . . . Thus, computation of extended home office overhead using an estimated daily rate is an extraordinary remedy which is specifically limited to contracts affected by government-caused suspensions, disruptions and delays of work.

Absent these circumstances, ... it is inappropriate to use the Eichleay formula to calculate home office overhead for contract extensions because adequate compensation for overhead expenses may usually be calculated more precisely using a fixed percentage formula.

*C.B.C. Enterprises*, 978 F.2d at 675 (citation omitted). Then, in *Community Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1581–82 (Fed.Cir.1993), we noted the review of the two methods of recovering home office overhead in *C.B.C. Enterprises* and stated:

> The first method would allow a contractor to recover a fixed percentage mark-up of the direct costs it incurred. [978 F.2d] at 672. However, if compensable delay occurs and the contractor demonstrates that it could not have taken on any other jobs during the contract period, the Eichleay formula, which calculates home office overhead on a daily basis, may also be used. *Id.* at 672–74. "The contractor having met this burden, the government may only preclude use of the Eichleay formula if it can somehow show that the contractor would suffer no loss by using a fixed percentage mark-up formula." *Id.* at 674; *see Capital Elec. Co.*, 729 F.2d at 745–46.

If the formula does not precisely fit the circumstances, this does not warrant either dismissal of the claim or determination that the *Eichleay* formula is inapplicable; rather, it warrants adaptation, if such is needed, to the situation as it existed. This court has suggested that "close variations" of the *Eichleay* formula may sometimes be appropriate. *Capital Electric Co. v. United States*, 729 F.2d 743, 747 (Fed.Cir.1984) (Although this court is "satisfied that the record does not support use of the modified Eichleay formula instead of the Eichleay formula" with regard to Capital, the primary contractor, the use of an "Ei-chleay-type formula" by its subcontractors, Poole and Kent, "appears to be appropriate to its circumstances."). Furthermore, in *Wickham Contracting*, 12 F.3d at 1580 & n. 9, where we stated that "[w]hen a contractor satisfies the prerequisites for application of the *Eichleay* formula, that formula is the exclusive means available for calculating unabsorbed overhead to the delayed contract," we also stated that:

> In a case such as *Miles* in which a contractor provides inadequate financial data for an accurate and fair *Eichleay* calculation, the contracting officer and appeals board have options beyond the "jury verdict" approach of *Miles*. For instance, the board may estimate the contractor's total billings for the contract period. If the financial data is seriously incomplete, the *Eichleay* requirements are not met and, therefore, the claim for unabsorbed overhead compensation may simply be denied.

(Citations omitted). Thus I would reverse the ruling of the Court of Federal Claims as to the applicability of *Eichleay* principles.

This appeal reaches us on summary judgment, and the parties do not analyze the compensation that was paid to Nicon upon the termination for convenience. I take note of the government's argument that Nicon has been adequately compensated, and Nicon's argument that it has not. I would remand for determination of the predicate requirement of whether Nicon was on standby and unable to take on other work throughout the period of delay and, if so, whether the compensation already paid included all or any portion of the unabsorbed overhead calculated in accordance with *Eichleay* principles.