# United States Court of Appeals for the Federal Circuit

04-1119

SINGLETON CONTRACTING CORPORATION,

Appellant,

v.

Francis J. Harvey, SECRETARY OF THE ARMY,

Appellee.

Harvey K. Hess, Jr., of Kitty Hawk, North Carolina, argued for appellant. Of counsel was Arlie O. Pritchard, Jr., of Williamsburg, Virginia.

Carolyn J. Craig, Trial Attorney, Civil Division, Commercial Litigation Branch, United States Department of Justice, of Washington, DC, argued for appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director. Of counsel on the brief was Major Anissa Parekh, Trial Attorney, Office of the Judge Advocate General, Department of the Army, of Arlington, Virginia.

Appealed from:    Armed Services Board of Contract Appeals

# United States Court of Appeals for the Federal Circuit

04-1119

SINGLETON CONTRACTING CORPORATION,

Appellant,

v.

Francis J. Harvey, SECRETARY OF THE ARMY,

Appellee.

_____

DECIDED:  January 26, 2005
_____

Before NEWMAN, CLEVENGER, and BRYSON, <u>Circuit Judges</u>.

BRYSON, <u>Circuit Judge</u>.

In September 1993, Singleton Contracting Corporation entered into a contract with the Department of the Army to do construction work at two Army Reserve Centers. The contract contained a clause requiring Singleton to buy and maintain specified types and amounts of insurance "during the entire period of performance under this contract." The same clause required Singleton to provide the contracting officer with proof of the required insurance "prior to commencement of work." The contract contained another clause requiring Singleton to furnish a certificate of insurance at the preconstruction conference.

The preconstruction conference was held on November 2, 1993. During the conference, it became apparent that the government's plans were flawed and that

construction could not begin until the government provided Singleton with new construction drawings. In addition, Singleton failed to provide a certificate of insurance at the conference. Singleton's representative stated that Singleton would submit proof of insurance "within the next few days," but Singleton never did so. On February 15, 1994, the contracting officer informed Singleton that the government would not allow Singleton to begin work at either Reserve Center until Singleton submitted the required certificate of insurance. Singleton responded that it was not obligated to furnish proof of insurance until ten days after the government allowed work to begin.

In the meantime, Singleton began submitting invoices requesting payment for material and bonds purchased for the contract. The contracting officer refused to pay the invoices on the ground that no proof of insurance had been submitted. Finally, on August 8, 1994, the contracting officer terminated the contract for the convenience of the government. At that point, the government had not provided Singleton with the revised drawings and specification changes, Singleton had not provided proof of insurance, and none of the contract work had been performed.

Singleton submitted proposals for settlement of the termination. Singleton sought settlement costs, the costs of material and bonds it procured for the contract, and overhead costs. The Defense Contract Audit Agency conducted an audit and issued a report on Singleton's claims. The audit focused on the amount that Singleton claimed it was owed for unabsorbed overhead, but it did not make a determination as to whether Singleton was entitled to the overhead. The auditor first found that Singleton's total amount of overhead during the period of the contract should be reduced from $108,125 to $88,343. More importantly, the auditor found that the contract accounted

for only 13 percent of Singleton's revenue in 1993 and 1994. Applying that fraction to Singleton's total overhead, the auditor determined that only $11,485 of overhead should be allocated to the government contract. Singleton subsequently demanded that the contracting officer make a decision with respect to the audit report. When the contracting officer did not make a timely decision, Singleton appealed to the Armed Services Board of Contract Appeals from the deemed denial of its claims.

Before the Board, Singleton sought to recover overhead costs, the costs of material purchased for the contract, and post-termination settlement costs. Singleton Contracting Corp., ASBCA No. 51692 (Aug. 8, 2003). Regarding the claim for overhead for the period during which performance of the contract was delayed, the Board found that Singleton was responsible for the delay. The Board ruled that the government's failure to provide new drawings was merely a concurrent cause of the delay and that Singleton therefore was not entitled to unabsorbed overhead under Nicon, Inc. v. United States, 331 F.3d 878 (Fed. Cir. 2003). The Board further found that Singleton had not presented sufficient evidence to justify an award of overhead on any other theory of recovery. The Board failed to specifically address Singleton's claims for the costs of materials purchased for the contract and the post-termination settlement costs.

I

In pressing its case for unabsorbed overhead resulting from the contract delay, Singleton essentially asks that we find that the government was solely responsible for the delay. Singleton bases its argument on two alternative theories. First, it claims that it was not required to provide proof of insurance before beginning work. Therefore, it asserts, the lack of insurance cannot form the basis for attributing the delay to the

company. Second, Singleton contends that if it was required to provide proof of insurance before beginning work, it was required to do so only at the preconstruction conference. Because the conference was suspended and never rescheduled, Singleton argues that its obligation to produce proof of insurance never matured.

Singleton's first theory relies on a clause entitled "Insurance—Work on a Government Installation," which states that Singleton must offer proof of insurance "before commencing work under this contract." The contract also specifies that Singleton must begin work within ten days of receiving the government's notice to proceed. Singleton therefore claims that it was required to provide insurance only after the government directed it to begin work.

The problem with this argument is that the contract also contains a clause that explicitly required Singleton to furnish a certificate of insurance during the preconstruction conference. The two provisions are easily reconciled: the first specifies that the contractor must submit a certificate of insurance before beginning work, while the second specifies exactly when proof of insurance must be provided during that pre-work period, i.e., at the preconstruction conference. Accordingly, we agree with the Board that Singleton was required to present proof of insurance at the preconstruction conference.

Alternatively, Singleton asserts that it did not fail to furnish proof of insurance at the preconstruction conference because the business at the conference was never concluded. Singleton argues that the government's construction drawings were so defective that it was necessary to schedule another conference before construction could begin. For support, Singleton points to the notes made by the government during

the meeting, which state that another preconstruction conference would be scheduled. Singleton contends that it could be held accountable for the delay only if it did not produce proof of insurance by the conclusion of that second meeting, because only then would it have failed to meet its obligation to furnish proof of insurance at the preconstruction conference.

Singleton's argument is based on a strained reading of the contract. The contract provided that the contracting officer would schedule a preconstruction conference and that Singleton would be required to produce proof of insurance at that time. The government was required to produce adequate construction drawings at the same conference. The preconstruction conference was held, but Singleton did not produce the required certificate of insurance and the government did not produce the required drawings. The fact that neither party complied with its obligations as of the time of that conference does not mean that either one should be excused for its default. If Singleton's obligations did not mature on account of the need to schedule a new conference, then neither did the government's. The better interpretation of the contract is that both the government and Singleton were required to comply with their obligations at the original preconstruction conference and their failure to do so jointly caused delay in the project. The fact that it became necessary to schedule another conference does not mean that Singleton was freed from the requirement that it produce a certificate of insurance at the initially scheduled conference. We therefore agree with the Board's conclusion that Singleton's delay "began on the date of the pre-construction conference when submittal of such proof [of insurance] was required."

Singleton's agreement at the preconstruction conference that it would provide proof of insurance "in the next few days" suggests that Singleton was aware that the company was not in full compliance with its obligations. Yet Singleton never cured its failure in that regard, even after subsequent requests by the government for the proof of insurance. If Singleton had provided that proof, it would have placed responsibility for the delay entirely on the shoulders of the government. Instead, Singleton failed to do so and therefore was properly held jointly accountable with the government for the delay. See Nicon, 331 F.3d at 887. For that reason, Singleton is not entitled to reimbursement for its unabsorbed overhead during the contract period.

II

Singleton argues that it was entitled to overhead on its direct costs under the contract solely by reason of the termination for convenience.

The government acknowledges that a contractor may receive overhead on its direct costs following a termination for convenience. The government also points out, however, that whenever the calculation of overhead is made under this method, very specific information is required from the contractor. As the government auditor testified before the Board, this calculation starts with the contractor's total indirect costs for each fiscal year of the contract's performance and divides that amount by the contractor's total direct costs for that year to yield an "overhead rate." The overhead rate is then multiplied by the total direct costs of the contract in question to arrive at the indirect costs that are allocable to that contract for that fiscal year. The problem is that Singleton never submitted evidence to the Board of the company's total direct costs for

1993 and 1994. Thus, it was impossible for the Board to apply this formula and determine the amount of Singleton's overhead that was allocable to the contract.

Singleton admits that it never supplied the Board with the information needed to make the allocation calculation but contends that it is nonetheless entitled to relief because of the unusual circumstances of this case. Singleton bases its claim on the fact that during the pendency of the contract, it had no other business. Singleton argues that it is therefore entitled to have all of its overhead for the contract period paid by the government. This line of reasoning, however, ignores the possibility that Singleton had other contracts in 1993 and 1994, outside of the contract period. Indeed, the audit report states that Singleton had other contract revenue in both 1993 and 1994. Singleton's argument also overlooks the fact that the calculation of the company's overhead costs was based on Singleton's total overhead for 1993 and 1994, which was then multiplied by the fraction consisting of the proportion of the days in those years in which the contract was in effect. It would be unfair to let Singleton base its calculation of indirect costs on the overhead for the entire year, but to limit the direct costs to those experienced during a specific time period chosen by the contractor. Simply because the parties stipulated to the "total fixed overhead expenses for the contract period" does not entitle Singleton to the entirety of this "total fixed overhead," as Singleton suggests. To support that claim, Singleton relies on the auditor's statement before the Board that if a contractor has only one contract, the overhead expenses during the contract period would be allocable to that contract. However, the auditor immediately clarified that if other contracts were under way during the contractor's fiscal year, they would bear their share of the overhead. Singleton never presented evidence establishing either that it

had no other contracts during the years in question or the amount of direct costs attributable to those other contracts. Thus, the Board was never given the evidence it needed to address Singleton's claims. Singleton admitted as much during oral argument and suggested that we remand to the Board for further proceedings. We see no reason to give Singleton a second opportunity to prove its case when it failed to take advantage of the first. We therefore affirm the Board's decision to deny overhead based on the termination for convenience.

III

Singleton also appeals with regard to its claims for settlement costs and the costs of materials procured for the contract, plus profit. Specifically, Singleton asks for $4,706 for settlement costs and $1,441 for the cost and profit on materials bought for the contract. Although the Board failed to rule on those claims, the government concedes that Singleton is owed that money. Accordingly, we reverse in part and direct that Singleton recover those expenses.

AFFIRMED IN PART and REVERSED IN PART.