# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Pros Cleaners | ) | ASBCA No. 59797 |
| | ) | |
| Under Contract No. FA3300-13-P-0033 | ) | |

APPEARANCE FOR THE APPELLANT: Mr. Bruce Webber
President/CEO

APPEARANCES FOR THE GOVERNMENT: Lt Col Matthew J. Mulbarger, USAF
Air Force Chief Trial Attorney
William M. Lackermann, Jr., Esq.
Alexis J. Bernstein, Esq.
Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE WILSON

This appeal involves the claim of Pros Cleaners (appellant or Pros) arising out of the Air Force's (government's) termination for convenience of its commercial items contract for laundry services at the Air Force Reserve Officer Training Corps (AFROTC) training site located at Camp Shelby, Mississippi. Appellant has elected to proceed under the Small Claims (Expedited) Procedure pursuant to Rule 12.2[1]. The parties waived an oral hearing to have the appeal decided on the record under Rule 11. The record consists of the government's Rule 4 file (tabs 1-32), as supplemented (tabs 33-135), and appellant's exhibits (1-3). Both parties have submitted briefs. Entitlement and quantum are before the Board.

## FINDINGS OF FACT

1. The government entered into Contract No. FA3300-13-P-0033, which was set aside specifically for a small business, with appellant on 6 May 2013 for laundry services for the AFROTC at Camp Shelby, Mississippi. The contract specifically required appellant to provide laundry services under two contract line item numbers (CLINs): cadet uniforms and undergarments (CLIN 0001); and comforters (CLIN 0002), on a firm-fixed-price (FFP) basis of $0.70 per pound. The contract did not contain any prices for hourly wages or salaries for employees, or any methodologies

---

[1] The Contract Disputes Act, implemented by Board Rule 12.2, provides that this decision shall have no value as precedent, and in the absence of fraud shall be final and conclusive and may not be appealed or set aside.

for determining overhead or profit. The total for all services under the contract (based upon estimated quantities) was $57,190.00. (R4, tab 1)

2. The contract also incorporated FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (FEB 2012) which reads in pertinent part:

> (i) *Payment*....
>
> (2) *Prompt Payment*. The Government will make payment in accordance with the Prompt Payment Act (31 U.S.C. 3903) and prompt payment regulations at 5 CFR part 1315.
>
> ....
>
> (4) *Discount*. In connection with any discount offered for early payment, time shall be computed from the date of the invoice....
>
> ....
>
> (l) *Termination for the Government's convenience.* The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work.... Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

Moreover, the Prompt Payment regulations found at 5 C.F.R. § 1315.4(g) reads in pertinent part:

> (g) Determining the payment due date.

2

(1) Except as provided in paragraphs (g)(2) through
(5) of this section, the payment is due either:

(i) On the date(s) specified in the contract;

(ii) In accordance with discount terms when
discounts are offered and taken (*see* §1315.7);

(iii) In accordance with Accelerated Payment
Methods (*see* §1315.5); or

(iv) 30 days after the start of the payment period as
specified in paragraph (f) of this section, if not
specified in the contract, if discounts are not taken,
and if accelerated payment methods are not used.

3. Appellant commenced performance on 29 May 2013 (R4, tab 2). On 27 June 2013 appellant notified the government that "due to the delay in processing invoices, we will charge interest at 5% per day on late payments" (R4, tab 5). By email dated 1 July 2013, appellant notified the government that it had not received any payment for services rendered under the contract as of date. Appellant stated further:

> [W]e are completely out of funds to provide laundry
> services at [C]amp [S]helby, so as of today because we
> have know [sic] other option, we will have to discontinue
> services at [C]amp [S]helby. Once payments are received
> we will restart the program immediately.

(R4, tab 6)

4. By letter dated 3 July 2013, the government terminated the contract for convenience and requested that appellant submit its settlement proposal within 30 days (R4, tab 8). Appellant submitted its proposal requesting $30,015.18, which included the following items: processing laundry cost: $9,000.00; fuel cost: $3,600.00; employee salary: $8,800.00 monthly; transportation cost: $500.00 monthly; vendors cost: $4,000.00; and late charges: $4,115.18. The record reflects that appellant also included several hand-prepared invoices and employee pay slips, including an allegedly un-invoiced laundry ticket dated 29 June 2013 for 53 bags of laundry weighing 478 pounds, which, at the contract price of $0.70 per pound, translates into $334.60. (R4, tab 11 at 1, 2) The contracting officer (CO) inquired within to determine the validity of the 29 June 2013 laundry ticket, however the research indicated that 28 June 2013 was the last date that appellant invoiced for services (R4,

3

tab 28 at 6). Thus, we find that the 29 June 2013 laundry ticket was not invoiced prior to the termination. We further find that the record does not contain any evidence that appellant performed laundry services on or after 29 June 2013.

5. Further, the government conducted its own analysis of the contract payment history which demonstrated that appellant submitted several invoices that were either paid in full as submitted (invoice numbers 80003, 80004, 80005, 80006); paid within 15 days and a discount was taken by the government (invoice numbers 80001 and 80001A – dated 25 June 13); voided (invoice number 80002); or rejected (80001A – dated 17 June 13, and invoices 80007 through 80011). Four invoices were paid more than 15 days after submittal: invoice numbers 80003 ($5,125.40 – 21 days); 80004 ($614.60 – 18 days); 80005 ($889.70 – 16 days); and 80006 ($1,392.30 – 24 days). Thus, according to the government's analysis, appellant had been paid $14,593.99. (R4, tab 12) Further, the government avers that appellant had been paid in full and there were no outstanding weight tickets or invoices (gov't br., ex. 1, Knott decl.).

6. The parties continued to negotiate and exchange information, with no resolution by June of 2014. By email dated 16 June 2014, appellant notified the government that it had sent its original settlement offer nearly one year prior with no resolution, and thus would be filing an appeal with the Board (R4, tab 32).

7. By email dated 17 June 2014, appellant filed an appeal with the Board, which was docketed as ASBCA No. 59369. The parties subsequently moved to dismiss this appeal averring that "the current claim contains no termination costs allowable under FAR 12.403." The parties further agreed that "[s]hould Appellant identify allowable termination costs at a future date, the Government will consider a new Termination Settlement Proposal in accordance with FAR 52.212-4(l)." (Bd. corr. ASBCA No. 59369 ltr. dtd. 15 September 2015) Accordingly, on 17 September 2014, the Board dismissed the appeal.

8. Appellant submitted a revised settlement proposal dated 13 September 2014 in the amount of $13,050.00 (app. resp., ex. 1). The record reflects that this amount represented the hours spent negotiating the termination for convenience settlement proposal by CEO Webber and Manager Leroy Jackson, Jr. (supp. R4, tabs 38-39). The government offered to settle the matter based on the "charges that are demonstrate [sic] based on e-mail traffic between [Pros Cleaners] and representatives from [the government], directly resulted from the termination." The government added further "You requested a Contracting Officer's Final Decision so you can file with ASBCA. A formal Contracting Officer['s] Final Decision will be forthcoming as soon as [possible] and not later than COB Friday, 14 November 2014." (Supp. R4, tab 39 at 1)

9. In spite of appellant's request for a contracting officer's final decision (COFD), the parties continued to negotiate the revised settlement proposal throughout

the months of November and December of 2014 with no resolution (supp. R4, tabs 46-47). By email dated 1 December 2014 appellant again revised its proposal to $11,136.00. The government responded, advising appellant that a COFD would be forthcoming and could anticipate a response not later than 12 December 2014. On 20 January 2015, appellant again inquired about a decision on its proposal. The government responded that the decision required legal review prior to issuance and advised that a decision would be issued before 30 January 2015. (Supp. R4, tab 48) The record does not contain the COFD, thus the Board is unable to ascertain whether the government issued a COFD on the claim.

10. By email dated 20 January 2015, appellant filed a notice of appeal with the Board from the deemed denial of the claim, which was docketed as ASBCA No. 59797.

11. Both parties submitted briefs and replies. However, appellant submitted an exhibit which purports to be a draft settlement agreement between the parties dated 4 June 2015 wherein the government agreed to settle the instant appeal for $11,607.00 (app. br., ex. 3 at 2). The government offered no objection to the inclusion of the aforementioned document into the record.

## DECISION

The overall purpose of a termination for convenience settlement is to fairly compensate the contractor and to make the contractor whole for the costs incurred in connection with the terminated work. *SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,223 (citing *Nicon, Inc. v. United States*, 331 F.3d 878, 885 (Fed. Cir. 2003)). With regard to what a contractor may recover, the termination for convenience clause from the contract at issue in this appeal reads: "plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination." This part, referred to as the "second prong" of the commercial items termination for convenience clause is germane to the dispute in this appeal. *See SWR*, 15-1 BCA ¶ 35,832 at 175,223.

Here, the claim before the CO for consideration did not include any costs for un-invoiced work prior to the 3 July 2013 termination; nor does it include any costs for paying off suppliers after the effective date of the termination. The claim presently before the Board is for appellant's salary for post-termination time spent negotiating the settlement (finding 4).

In its briefing to the Board, the government spends the majority of its time addressing the earlier settlement proposal (i.e., the first proposal was filed under

5

ASBCA No. 59369 that was jointly dismissed) and never addresses the post-termination costs claimed under appellant's revised settlement proposal.

The decision in this appeal comes down to the interpretation of what is allowable for a contractor to recover under the second prong of the commercial items termination for convenience clause, which relates to "reasonable charges the Contractor can demonstrate" directly "resulted from the termination" (finding 2). Based upon this record, the Board determines that appellant incurred unavoidable reasonable post-termination costs in attempting to settle the matter in the amount of $11,607.00.

## CONCLUSION

The appeal is sustained.

Dated: 20 October 2015

OWEN C. WILSON
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59797, Appeal of Pros Cleaners, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals