ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| GSI Construction Corp. | ) ASBCA No. 63828 |
| | ) |
| Under Contract No. FA4417-23-C-0009 | ) |

APPEARANCE FOR THE APPELLANT:      Mr. Josh Owens
                                                            President

APPEARANCES FOR THE GOVERNMENT:   Caryl A. Potter, III, Esq.
                                                            Air Force Deputy Chief Trial Attorney
                                                            Michael J. Farr, Esq.
                                                            Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE MELNICK

GSI Construction Corporation (GSI) contracted to provide renovation services to the Air Force's 1st Special Operations Contracting Wing (government). The solicitation requested an initial price valid during a base period, followed by an escalated option price valid during a later period in the event the award was delayed. GSI seeks a recovery that would provide it with the option price because although the government awarded the contract in the initial period, it did not issue the notice to proceed and allow site access until the later period. We find the government unreasonably delayed the notice to proceed and site access, entitling GSI to costs under the terms of the contract's suspension of work clause.

GSI is pro se and elected to proceed under Board Rule 11. The government did not agree. Under hybrid proceedings implemented by the Board, GSI submitted evidentiary materials in support of its case in chief under Rule 11, while the government was allowed to call live witnesses to testify under oath in support of its case. The Board then allowed further briefing by the parties.

FINDINGS OF FACT

1. The government originally issued a solicitation in 2022 for renovation, repair, and construction of an addition to a child development center (R4, tab 1). The period of performance was to be 515 days (R4, tab 1 at 8). Because there were no funds for the contract when the solicitation was issued, no award would be made until funds became available (R4, tab 7 at 2). Nevertheless, as amended, proposals were due June 6, 2023 (R4, tab 9 at 2). The amended solicitation recited the work to be performed in two sets of line items. The base set (items one through eight)

sought pricing valid through September 30, 2023. (R4, tab 7 at 3-5) The identical option set of line items (1001-08) sought pricing valid from October 1 through December 31, 2023 (R4, tab 7 at 5-7). Prices would be evaluated for the period during which funds became available (R4, tab 7 at 20). GSI's proposal escalated its option period prices above its base prices by a total of $539,000 (app. supp. R4, tab 1 (Proposal at 4-7)).

2. Funds for the project were certified on August 15, 2023, and on that date the government notified GSI that it was the successful offeror. The notification required GSI to submit a certificate of insurance within 10 days, which GSI did. (R4, tab 15; tr. 15, 150) The awarded contract, dated August 17, accepted GSI's pricing for line items one through eight (R4, tabs 10, 15). Relevant provisions included the requirement that GSI submit performance and payment bonds, which it did on September 6, 2023, and corrected the next day (R4, tab 10 at 2, tabs 25, 31; tr 31-33). GSI was to begin performing within 10 days of the notice to proceed (R4, tab 10 at 2, 31). GSI could not mobilize to the site and begin construction until it received that notice (tr. 116). Drawing G4 of the contract required GSI to submit a sequence of construction plan (also called a phasing plan) for approval prior to starting construction (R4, tab 10 at 627). Finally, the contract incorporated Federal Acquisition Regulation (FAR) 52.242-14, SUSPENSION OF WORK (APR 1984) (*id.* at 30).

3. GSI submitted an initial phasing plan on September 4, 2023, which it revised for the final time on September 13 (R4, tabs 22, 39; tr. 105, 122-23, 156). Though the revised plan was acceptable to it, the government failed to issue an express approval (tr. 45-47).

4. Critical to GSI avoiding escalated costs was that it finalize material orders to lock in vendor pricing and commence construction as far in advance of labor cost increases as possible (Owens decl. ¶ 14).[1] Before many materials could be ordered, GSI needed to access the work site to verify conditions and make measurements. However, the government did not allow GSI onto the site until it issued the notice to proceed. (*Id.*). Similarly, various materials had to be approved by the government through a submittal process (tr. 25). These included items to be selected by the government for color, texture, size, wording, and layout. Other items required customized engineering that had to be approved before manufacture. GSI could not lock in material prices until submittals were approved. (Owens decl. ¶ 14; tr. 142-44) GSI inquired about providing submittals to the government as early as August 31, 2023. The government initially told it not to present them. (R4, tab 20) Although the

---

[1] Mr. Owens' amended declaration, dated January 23, 2025, served as GSI's opening Rule 11 submission.

government later offered some feedback, it would not officially act on submittals until after it issued the notice to proceed (R4, tabs 43, 45, 48; tr. 25-29).

5. On September 7, 2023, the government informed GSI that it was considering issuing the notice to proceed by October 2 (R4, tab 33 at 1). GSI indicated that was fine and would prepare for it (R4, tab 34 at 1). However, during the September 19 preconstruction meeting, the government informed GSI that it would not issue the notice on October 2 because the necessary preparatory tasks had not been completed. GSI could expect the notice in mid-October. (R4, tab 41 at 1; tr. 55-56, 128-30) The tasks the government had to perform included the removal of kitchen equipment, food, and utensils. Also, communications and surveillance equipment, televisions, intercoms, computer lines, and office staff had to be relocated. Additionally, various Air Force officials and parents of the children attending the center had to be notified. (Tr. 54-58)

6. On September 26, 2023, GSI inquired about the notice to proceed (R4, tab 52 at 3). On September 28, it complained to the government that upon award of the contract it purchased bonds and hired personnel. It said it would lose money if it did not start work the following week. (*Id.* at 1) On October 16, GSI again asked about the notice to proceed, observing the government had said to expect it by the middle of the month after missing the original October 2 date. It stressed the situation had become critical for it given its commitment of time and resources. (R4, tab 57) GSI urgently sought to start construction (tr. 137). The government internally acknowledged the request the next day, observing that delaying the notice "too long" could lead to a claim from GSI. It then considered October 23 as the date for the notice to proceed, with the architect informing the center's management that she believed it would be another month after the notice before construction started. (R4, tab 58 at 1, tab 59 at 2)

7. On October 20, 2023, the contracting officer issued a notice to proceed to GSI, effective October 23 (R4, tab 60 at 6). However, the facility remained unavailable (Owens decl. ¶ 13). The center had still not finished the preparation work necessary before GSI could begin work (tr. 118-19, 156-57). GSI had to suggest that the government grant a 42-day extension to contract performance, delaying its mobilization to the site until December 4, because the government did not have the facility ready (tr. 120-21, 132-33, 138, 174-75). GSI was finally given access to the project site on December 4. We find the government took 109 days from the date of award to make the facility available to GSI. (Tr. 178)

8. Considering GSI provided compliant bonds by September 7, 2023, a reasonable date for the government to issue the notice to proceed was the one to which

GSI consented, October 2.[2]  The government did not issue the notice on that date because it had failed to accomplish its own list of internal tasks necessary before construction could start.  However, it did not finish that list on October 23 either and only issued the notice then because it realized the delay exposed it to a claim. Accordingly, there was no reason the government could not have issued the notice to proceed on October 2 and start formally addressing GSI's material submittals, allowing GSI to begin locking in prices.  The delay issuing the notice to proceed past October 2 was unreasonable.

9.  Additionally, we are not convinced it was reasonable for the government to postpone GSI's access to the site for 109 days after the award to complete its list of preparatory tasks.  Nothing in the record justifies the reasonableness of taking over three and a half months to relocate kitchen equipment, food, communications and surveillance equipment, televisions, intercoms, computer lines, and staff, and to notify officials and parents.  Delaying access to the site past October 2, 2023, was too long for GSI to reasonably be expected to bear the associated costs.  It was, therefore, unreasonable.

10.  On November 10, 2023, GSI submitted a certified claim complaining about the government's delay in issuing the notice to proceed and granting site access, seeking $539,000 (R4, tab 12).  The contracting officer (CO) denied the claim on January 22, 2024 (R4, tab 13).

DECISION

Under the contract's Suspension of Work clause, if the CO suspends, delays, or interrupts the work "for an unreasonable period of time, . . . an adjustment shall be made for any increase in the cost of performance of [the] contract (excluding profit) necessarily caused by the unreasonable suspension, delay, or interruption, and the contract modified in writing accordingly."[3]  Thus, it "provides a remedy to a contractor

---

[2] The government suggests that the submittal of the phasing plan was also a condition of the notice to proceed.  Nothing in the contract imposes such a requirement. Even if it had, an acceptable phasing plan was submitted on September 13.

[3] In relevant part the contract's suspension of work clause, FAR 52.242-14, SUSPENSION OF WORK (APR 1984), says the following:

(a) If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted (1) by an act of the Contracting Officer in the administration of this contract, or (2) by the Contracting Officer's failure to act within the time specified in this contract (or within a reasonable time if

4

when its work is delayed or interrupted by the Government for an unreasonable period of time." *C&C Plumbing & Heating*, ASBCA No. 44270, 94-3 BCA ¶ 27,063 at 134,856. The delay does not have to be the government's fault to be compensable. *Merritt-Chapman & Scott Corp. v. United States*, 429 F.2d 431, 432 (Ct. Cl. 1970). Whether a suspension is unreasonable in length depends upon its effect upon the contractor and the contract work under the circumstances. *Sol Flores Constr. (A Division of Floresol Co.)*, ASBCA Nos. 31557, 32608, 90-1 BCA ¶ 22,365 at 112,361. An initial portion of the delay can be reasonable followed by an additional period that is unreasonable. *See Chaney and James Constr. Co. v. United States*, 421 F.2d 728, 735 (Ct. Cl. 1970) (addressing substantively identical clause text). A delay is unreasonable when it "lasts so long (regardless of the absence of government fault) that the contractor cannot reasonably be expected to bear the risk and costs of the disruption and delay." *Merritt-Chapman & Scott Corp.*, 429 F.2d at 432.

A notice to proceed is the government's order allowing the contractor to mobilize its equipment and personnel to perform the contract. *See Kraft Constr. Co.*, ASBCA No. 4976, 59-2 BCA ¶ 2347 at 10,732. "[D]amages for unreasonable delay in issuing the notice to proceed may be recovered under the suspension clause." *Nicon, Inc. v. United States*, 331 F.3d 878, 886 (Fed. Cir. 2003); *Triax-Pac J.V. v. Stone*, 958 F.2d 351, 354 (Fed. Cir. 1992). The reasonableness of the time taken to issue the notice is a question of fact. *Parish v. United States*, 98 F. Supp. 347, 349 (Ct. Cl. 1951); *see also Elter S.A.*, ASBCA No. 52451, 01-1 BCA ¶ 31,373 at 154,913-14 (explaining that what constitutes a reasonable period depends upon the circumstances of the case). We have found unreasonable the government's delay in issuing the notice to proceed beyond October 2, 2023 (finding 8). Similarly, unreasonable delay in granting access to the worksite is also subject to the suspension of work clause. *John A. Johnson and Sons, Inc. v. United States*, 180 Ct. Cl. 969, 990 (1967); *see also C&C Plumbing & Heating*, 94-3 BCA ¶ 27,063 at 34,857. We have found the government's delay in allowing access after October 2 was unreasonable (finding 9).

---

not specified), an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessarily caused by the unreasonable suspension, delay or interruption, and the contract modified in writing accordingly. However, no adjustment shall be made under this clause for any suspension, delay, or interruption to the extent that performance would have been so suspended, delayed, or interrupted by any other cause, including the fault or negligence of the Contractor, or for which an equitable adjustment is provided for or excluded under any other term or condition of this contract.

GSI contends the notice to proceed and site access delays past September 30, 2023, dictate that we should award it $539,000 so that it can receive the escalated price it proposed for the option period line items.  It suggests that the government purposely awarded the contract during the base period to obtain the lower price, knowing full well it would not permit performance until the option period, thereby subverting the purpose of a second, escalated price proposal.  GSI appears to argue that government deceit entitles it to reformation of the contract price.

"A misrepresentation of material fact inducing another to enter a contract may render that contract . . . reformable at the option of the party to whom the misrepresentation is made." *Solar Turbines Inc. v. United States*, 114 F.3d 1206 (Fed. Cir. 1997) (Table), 1997 WL 291971, at *4 (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 163-164, and 166 (1981)); *see also Rainbow Valley Corp.*, ASBCA No. 11691, 68-2 BCA ¶ 7195 at 33,414 (explaining that to qualify for reformation, among other things, a misrepresentation "must be a misstatement concerning a material fact made for the purpose of inducing the other party to act and in fact relied on by the other party").  However, we have not found that the government made any factual misrepresentations that induced GSI to enter this contract.  GSI has not offered any evidence that the government informed it that if an award were made during the base period for that price, GSI would receive the notice to proceed and site access prior to September 30.  Nor did the solicitation make such a representation.  GSI knew that performance would occur after that date, given that the solicitation specified a performance duration of 515 days (finding 1).  Additionally, GSI consented to the government's initial proposal to issue the notice to proceed on October 2 without complaint, which, as we have found, would have been reasonable had it occurred (findings 5, 8).  Although the government's delays in issuing the notice to proceed and granting site access were unreasonable, GSI has not proven that they reveal a scheme to deceive it, and we decline to infer such action from the evidence.  GSI says the government's delays have financially harmed it by postponing its ability to order materials and access the site.  We agree that it should be compensated under the suspension of work clause for the increase in costs of performance that are the consequences of the unreasonable delays we have found.  Reformation of the contract price is not necessary to make GSI whole.

These proceedings encompassed both entitlement and quantum.  GSI rested upon its request for the full option price without offering evidence of increased costs.  Because GSI is pro se and entitled to some administrative leeway, we will grant it another opportunity to prove its costs.  *See Erik Robinson d/b/a The Artwork Factory*, ASBCA Nos. 63727, 63809, 24-1 BCA ¶ 38,633 at 187,805.

CONCLUSION

We sustain the appeal on entitlement in accordance with this decision. The appeal is remanded to the parties to address quantum. In the event negotiations fail, GSI is free to return to prove that phase of the appeal.

Dated: June 25, 2025

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63828, Appeal of GSI Construction Corp., rendered in conformance with the Board's Charter.

Dated: June 26, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

7